UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No. 3:16-cr-0004-GFVT-REW |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| DAVID GILES, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

In June 2016, Defendant David Giles stood trial for an alleged violation of the Clean Water Act. Giles, a septic tank driver, was charged with discharging raw sewage into Wildcat Creek in Anderson County, Kentucky. After three days of trial, the jury found Giles guilty of knowingly discharging a pollutant into a water of the United States from a point source, in violation of 33 U.S.C. § 1319(c)(2)(A). Giles now moves the Court for a judgment of acquittal or, in the alternative, a new trial, on the basis that the Government presented insufficient evidence at trial to sustain the conviction. For the reasons set forth below, Giles's motion will be DENIED.

**I**

Pursuant to 33 U.S.C. § 1319(c)(2)(A), any person who knowingly discharges a pollutant into a United States waterway from a point source, without a National Pollutant Discharge Elimination System permit issued by the Environmental Protection Agency, violates the federal Clean Water Act. "Pollutant" is broadly defined under the Clean Water Act to include "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock,

sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." *See* 33 U.S.C. § 1362(6). A "point source" is "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362(14). "Waters of the United States" has been defined as a navigable waterway, or a stream or tributary that flows directly or indirectly into a navigable waterway. *See* 40 C.F.R. § 122.2; *Rapanos v. United States*, 126 S. Ct. 2208 (2006).

In March 2016, David Giles, a septic tank installer operating in and around Versailles, Kentucky, was charged with knowingly discharging an estimated one thousand gallons of raw sewage from a septic pumper truck into Wildcat Creek, a steep embankment on Wildcat Road in Anderson County, Kentucky. [R. 1.] A jury found Giles guilty of this conduct after a three day trial in June 2016. [R. 53.] Subsequently, Giles filed a motion for judgment of acquittal or for a new trial. [R. 56.] After the Court preliminarily denied the motion for lack of appropriate citations to the case record, Giles re-filed his motion in accordance with the Court's order. [R. 64.] That renewed motion is now ripe for the Court's review.

**II**

After a jury has reached a verdict, a defendant is permitted to file a motion for judgment of acquittal challenging the sufficiency of the evidence pursuant to Federal Rule of Criminal Procedure 29. *See* Fed. R. Crim. P. 29(a), (c). "A defendant making such a challenge bears a very heavy burden." *United States v. Tocco*, 200 F.3d 401, 424 (6th Cir. 2000). When undertaking such a review, the court "must decide whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007). Moreover, courts are precluded from weighing the evidence, considering witness credibility, or substituting its judgment for that of the jury. *United States v. Chavis*, 296 F.3d 450, 455 (6th Cir. 2002). "A judgment is reversed on insufficiency-of-the-evidence grounds 'only if [the] judgment is not supported by substantial and competent evidence upon the record as a whole.'" *Gardner*, 488 F.3d at 710 (quoting *United States v. Barnett*, 398 F.3d 516, 522 (6th Cir. 2005); *United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir. 1992)).

Federal Rule of Criminal Procedure 33 establishes that "[u]pon the defendant's motion, [a district] court may vacate any judgment and grant a new trial if the interest of justice so requires." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010); *see also* Fed. R. Crim. P. 33(a). The phrase "interest[ ] of justice is not defined within the rule, and courts have had marginal success in trying to "generalize its meaning." *Id.* (quoting *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989)). Still, several themes remain constant in the Rule 33 context. The conventional use of a Rule 33 motion "is to seek a new trial on the ground that 'the [jury's] verdict was against the manifest weight of the evidence.'" *Id.* (quoting *United States v. Crumb*, 187 F. App'x 532, 536 (6th Cir. 2006); *see also United States v. Legette-Bey*, 147 F. App'x 474, 486 (6th Cir. 2005); *United States v. Solorio*, 337 F.3d 580, 589 n. 6 (6th Cir. 2003). Finally, "[w]ith a Rule 33(a) motion for new trial on the ground that the verdict is against the weight of the evidence, the power of the court is much broader because a court may weigh the evidence and consider the credibility of the witnesses." *United States v. Dimora*, 879 F. Supp. 2d 718, 724 (N.D. Ohio 2012).

With these legal standards in mind, the Court considers whether Defendant Giles is entitled to an acquittal or to a new trial. As stated above, Giles was charged and convicted of

3

violating 33 U.S.C. § 1319(c)(2)(A). This crime essentially has four elements: the statute requires (1) that the Defendant knowingly discharged, (2) a pollutant, (3) into the waters of the United States, (4) from a point source. *See id.* The Government adequately proved all four elements, and Mr. Giles is not entitled to the relief he seeks.

**A**

First, the Court finds that sufficient evidence was presented at trial to find David Giles personally responsible for discharging the substance in question. Mr. Giles, through counsel, argues that the Government's circumstantial evidence allowed for only a "mere suspicion" or "reasonable speculation" that he was, in fact, the man who committed the crime. [R. 64 at 2.] But the record suggests otherwise. While the majority of the Government's proof was circumstantial, it was not insufficient to sustain the verdict. "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Fortson*, 194 F.3d 730, 735 (6th Cir. 1999).

During the trial, the Government presented circumstantial evidence about the Defendant's alleged pumping of the Boyd's Orchard septic tanks. Giles attempted to counter the Government's testimony through cross-examination and the testimony of Ken Lawson, and he contends that the Boyd's Orchard testimony on the whole points solely to the conclusion that he "did not pump the tanks at Boyds at all." [R. 64 at 3.] As the Government explains, however, compelling evidence was introduced that Giles did pump or could have pumped at least *some* of the sewage from the tanks at Boyd's Orchard. [*See* R. 65 at 3.] The Government also presented evidence that Defendant Giles was on Wildcat Road in a septic truck on the relevant date. [*See* R. 64 at 2 (citing R. 62 at 134-35).] Although defense witnesses testified that other septic tanks

4

regularly traveled down Wildcat Road, the Government's proof allowed jurors to reasonably infer that Giles was the individual responsible for the sewage dump.

In addition, a number of the Defendant's contentions about the Government's proof, or alleged lack thereof, are simply inaccurate. For example, Giles maintains there was "uncontradicted" evidence that the PTO on his septic truck was broken and that it was not possible to pump from that truck. [R. 64 at 4.] But as the Government points out in its response brief, Ken Lawson actually testified to the proper functioning of the truck's PTO on December 3 of the year in question. [R. 63 at 65-67.] On the whole, the record reflects that the jury's finding as to this element was not against the weight of the evidence under either the Rule 29 or the Rule 33 standard.

## B

Second, the Government adequately demonstrated that the substance dumped into Wildcat Creek, over one thousand gallons of raw sewage, was a pollutant for purposes of 33 U.S.C. § 1319(c)(2)(A). Defendant Giles does not appear to contest this element in his motion for acquittal or a new trial [*see* R. 64], and the record demonstrates that the Government's proof on the issue is sufficient to sustain the conviction. [*See* R. 63 at 16-24]; *see also* 33 U.S.C. § 1362(6).

## C

Third, the Government presented sufficient evidence that Wildcat Creek is a "water of the United States" for purposes of the Clean Water Act. As to this element of the crime, the jury instructions required the jury to find beyond a reasonable doubt that "[t]he discharge was into a water of the United States; that is, that Wildcat Creek was a navigable waterway or a stream or

tributary that flowed directly or indirectly into a navigable waterway." [R. 50 at 15.] The instructions go on to read:

> For purposes of the Clean Water Act, the term 'navigable waterway' means a body of water that has a significant connection to waters that are or were navigable in fact or that could reasonably be made so. A 'significant connection' is found when the discharge enters a water that, either alone or in combination with similarly situated lands in the region, significantly affects the chemical, physical, and biological integrity of other waters that are more readily navigable. The Government does not have to prove that Wildcat Creek, the waterway that received the discharge, is itself navigable in fact.

[*Id.* at 15-16.][1]

Although a defense witness Virginia Beasley testified "that the creek ran dry and that the spring that fed it went underground," this testimony was not "unchallenged" as Giles contends. [R. 64 at 7.] Instead, Government witness David Bryan Taylor testified that water always flows through Wildcat Creek, that several springs feed the creek, and that the creek dumps into the Kentucky River. [R. 61 at 57.] In addition, the Government presented a video recording of a boat navigating Wildcat Creek from a boat ramp in Tyrone to the place where the creek empties into the Kentucky River. [*See id*. at 58-60.]

Moreover, all jurors as well as the attorneys and the Court were transported by United States Marshals to Wildcat Road. The jury saw Wildcat Creek with their own eyes and was able to use that jury view to influence their perceptions about both sides' testimony. This jury view provided an excellent means for the jury to assess whether they felt Wildcat Creek met the appropriate standard for a "water of the United States." In light of the jury view and the testimony in the record, the Court finds the Defendant's conclusory contention that the

---

[1] This instruction was copied almost verbatim from the Eleventh Circuit's Pattern Criminal Jury Instructions, *available at* http://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/FormCriminalPatternJuryInstructions2016.pdf, page 657.

Government failed to show the requisite "significant nexus between the creek and an actual navigable water of the United States" to be without merit. [R. 64 at 7.]

**D**

Finally, the discharge at issue here was from a point source. The Clean Water Act defines point source as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362(14). This same definition was provided for the jury in the jury instructions [*see* R. 50 at 16], and courts have explained that the definition should be "broadly interpreted" and that it embraces "the broadest possible definition of any identifiable conveyance from which pollutants might enter waters of the United States." *Peconic Baykeeper, Inc. v. Suffolk Cnty.*, 600 F.3d 180, 188 (2d Cir. 2010) (citations omitted).

Although both parties assume that whether a septic truck is a point source is a question of fact for the jury, the weight of authority suggests the matter is one of law for the Court to decide. *See, e.g.*, *Concerned Area Residents for Env't v. Southview Farm*, 34 F.3d 114 (2d Cir. 1994) (interpreting whether a liquid manure spreading operation qualified as a point source); *United States v. Plaza Health Labs., Inc.*, 3 F.3d 643 (2d Cir. 1993) (performing statutory construction analysis to determine whether a defendant's activities fell within the scope of the Clean Water Act's point source definition); *United States v. Law*, 979 F.2d 977 (4th Cir. 1992) (finding, "as a matter of law," appellants' water treatment system constituted a point source).[2] In any event, this Court, as well as the jury, have been adequately convinced that a septic truck constitutes a point source under the Clean Water Act.

---

[2] Also of note, the Eleventh Circuit's Pattern Criminal Jury Instructions do not define, or even otherwise mention, the "point source" concept at all in the 33 U.S.C. § 1319(c)(2)(A) offense instruction.

During the trial, the Government called Sara Beard, a branch manager of the Surface Water Permit Branch, Kentucky Division of Water, Department of Environmental Protection, to the witness stand. Ms. Beard opined that, although she did not know for certain what type of vehicle or source dumped the sewage in question into Wildcat Creek, a septic truck with a pumping house would satisfy the statutory definition of a point source for purposes of a Clean Water Act violation. [R. 63 at 23-28.] To the extent Giles contends the Government failed to prove that he actually "put the sludge in the water," [*see* R. 64 at 7], the Court continues to find his arguments misguided. While Mr. Giles maintains "gravity, rain, or the firemen" could be responsible for the discharge ultimately found in Wildcat Creek, the effects of weather and gravity do not forbid a finding that there was a discharge from a point source. *See Sierra Club v. Abston Constr. Co*., 620 F.2d 41, 45 (5th Cir. 1980) ("Gravity flow, resulting in a discharge into a navigable body of water, may be part of a point source discharge . . .").

In the end, the Court finds the Government presented sufficient evidence for a reasonable jury to find Mr. Giles guilty of a Clean Water Act violation, and adequate evidence—whether direct or circumstantial—was presented as to each element of the crime. Any rational trier of fact could have found the four elements were proven beyond a reasonable doubt, particularly when viewing the evidence in a light most favorable to the government, *see* Fed. R. Crim. P. 29(a), and the jury's verdict was not against the manifest weight of the evidence. *See* Fed. R. Crim. P. 33.

### III

Therefore, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Defendant David Giles's Amended Motion for Acquittal or, in the alternative, Motion for a New Trial [R. 64] is **DENIED**.

This the 6th day of October, 2016.

Gregory F. Van Tatenhove
United States District Judge